PARFI HOLDING AB, Gunnar Gillberg, Plenteous Corp. and Grandsen, Ltd., Plaintiffs Below, Appellants,

v.

MIRROR IMAGE INTERNET, INC., Xcelera.com, Inc., Alexander M. Vik, Gustav Vik and Hans Magnus Fajerson, Defendants Below, Appellees.

No. 344,2006.

Supreme Court of Delaware.

Submitted: Jan. 31, 2007.
Decided: May 9, 2007.
Revised: May 17, 2007.

Thomas P. McGonigle and Todd C. Schiltz, of Wolf, Block, Schorr and Solis–Cohen, LLP, Wilmington, DE; Michael Paris (argued) and William C. Nystrom, of Nystrom, Beckman & Paris, LLP, Boston, MA, for Appellants.

Jesse A. Finkelstein and Brock E. Czeschin, of Richards, Layton & Finger, P.A., Wilmington, DE; Peter J. Macdonald (argued) and Robin L. Alperstein, of Wilmer, Cutler, Pickering, Hale and Dorr, LLP, New York City, for Appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

This is the second appeal in a derivative action that has yet to be considered on its merits. In the first appeal, this Court reversed the trial court's determination that appellants' breach of fiduciary duty claims were subject to arbitration in Sweden. During the four years thereafter, appellants failed to initiate the damages phase of the Swedish arbitration. Because the trial court had entered a stay of the Delaware action, there was no substantive progress on those claims, either. In the end, the complaint was dismissed because appellants' counsel had been permitted to withdraw and appellants were unable to obtain new counsel under the conditions imposed by the trial court. This Court shares many of the trial court's concerns about the manner in which appellants have proceeded. The trial court erred, however, in requiring appellants' new counsel to enter unconditional appearances that could not be withdrawn. Accordingly, we reverse.

### Factual and Procedural Background

In November 2000, minority stockholders of Mirror Image Internet, Inc. filed a derivative action alleging that Mirror Image's controlling stockholder, Xcelera.com,

Inc., and three of Xcelera's directors breached their fiduciary duties by diluting the minority stockholders' ownership interest without paying fair value, and by otherwise manipulating Mirror Image for their own benefit. Xcelera and Plenteous [1] acquired their Mirror Image stock in 1999 pursuant to an Underwriting Agreement with Mirror AB. Xcelera invested $1.75 million, and received a controlling block of stock. Plenteous invested $250,000 and received most of the remaining newly issued shares. The Underwriting Agreement requires the parties to resolve any disputes arising out of the Agreement through arbitration in Sweden.

Several months before filing suit in Delaware, Parfi and Plenteous demanded arbitration in Sweden. While the arbitration was proceeding, appellees moved to dismiss or stay this action on the ground that the Delaware claims were subject to arbitration. Before the motion was decided, Plenteous prevailed on its arbitration claim that the Underwriting Agreement was invalid, but Parfi's arbitration claims were dismissed. The arbitration decision did not address the amount of damages due to Plenteous. Thus, in December 2001, when the Court of Chancery granted appellees' motion to dismiss, there was a finding of liability in the Swedish arbitration, but the second arbitration, whose purpose would be to determine the amount of damages, had not begun.

In November 2002, this Court reversed the trial court, and held that appellants' breach of fiduciary duty claims could proceed in Delaware.[2] In January 2003, appellants filed an amended complaint, and the parties proceeded with discovery for the next nine months. In October 2003,

Xcelera moved to enjoin the Swedish arbitration. That motion was precipitated by a September 2003 letter from Plenteous to Xcelera, stating that Plenteous was seeking $569 million in damages under the arbitration award. The letter identified, as the basis for the damages, several of the same transactions under attack in the Delaware action.

Plenteous opposed the motion, but also offered to defer the damages arbitration until after the Delaware action was concluded. Xcelera accepted that offer, although it continued to argue that a permanent injunction should issue to prevent Plenteous from recovering twice. The trial court reached a result not requested by any party—it entered a stay of the Delaware action until the arbitration award becomes final.

The trial court entered the stay in February 2004. Six months later, appellants provided a status report indicating that Plenteous had not yet initiated the damages arbitration. In the first of two follow-up letters, Plenteous's Swedish counsel advised that it had been preparing its case "in full detail" and that it would initiate the damages arbitration in October 2004. The second letter, dated December 1, 2004, advised that Plenteous no longer planned to initiate the damages arbitration because Plenteous did not have adequate funds to pay the substantial filing fees.

In response to this development, the trial court scheduled a status conference for March 3, 2005. Several weeks before the conference, appellees moved to dismiss for failure to prosecute, and appellants filed a motion to lift the stay. At the March 3rd conference, the trial court did

---

1. At the time of its formation in 1997, Mirror Image was a wholly-owned subsidiary of Mirror Image Internet, AB (Mirror AB), a Swedish company. Appellant Parfi Holding AB is the successor in interest to Mirror AB. Appellant Plenteous Corp. is a stockholder of Mirror AB and Mirror Image.

2. *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149 (Del.2002) (*"Parfi I"*).

not mince words, calling the situation "astonishingly wasteful, inefficient, and inappropriate," and "absurd." In the trial court's view, appellants and their counsel had engaged in "games-playing" "tricky arguments, angular play, halls of mirrors," and their conduct, overall, was "absolutely outrageous." Notwithstanding its strong sentiments, the trial court decided not to dismiss the case at that time. Instead, the trial court allowed appellees to take discovery of appellants and their counsel in support of possible sanctions that might be imposed, with or without dismissal.

For the next two months the parties undertook the "sanctions" discovery. Not surprisingly, there were discovery disputes, followed by a motion to compel and briefing on the motion. In May 2005, as briefing was concluding, appellants' counsel moved to withdraw. Appellants opposed the motion, and the trial court appointed a special master to receive evidence, conduct a hearing and make a report recommending whether or not to allow counsel to withdraw. The process of presenting the motion to the special master, excepting to his report, and then briefing and arguing the matter to the trial court took 11 months. In April, 2006, the trial court granted the motion and ordered appellants to obtain successor counsel by May 15, 2006, or their action would be dismissed. By letter faxed to the trial court on May 15th, the Boston firm of Nystrom Beckham & Paris LLP (NBP) advised that it had been retained by appellants "under certain conditions," but it requested an additional 60 days to review the file and obtain local counsel. In response, the trial court entered an order requiring NBP and local counsel to enter "unconditional appearance[s]" which "shall not be withdrawn" by May 31, 2006. No appearances were entered, and the case was dismissed with prejudice on June 1, 2006.

## Discussion

Appellants argue that the stay of this action entered in February 2004 violated this Court's 2002 decision, which held that the arbitration clause in the Underwriting Agreement did not require arbitration of the breach of fiduciary duty claims alleged in the Delaware action. Appellants further argue that their decision not to proceed with the arbitration, due to financial difficulties, angered the trial court and led to other errors. First, the trial court ordered onerous and overbroad discovery of appellants' finances and their privileged communications. Then, the court not only granted appellees' motion to compel, but also awarded them attorneys' fees. Finally, after allowing appellants' counsel to withdraw, the trial court required appellants to obtain new counsel who would have to enter a "nonwithdrawable" appearance. Appellants claim that they could not satisfy the "nonwithdrawable" requirement consistent with their lawyers' obligations under the Delaware Lawyers' Rules of Professional Conduct.

We address each of these arguments.

■ Appellants first complain that the trial court's erred by entering a stay of this action in favor of the Swedish arbitration. Given the current posture of this litigation, the 2004 decision to enter a stay appears to be moot. Because Plenteous has abandoned the Swedish arbitration, the reason for the stay has evaporated. But, to the extent that the propriety of the stay is not moot, we find no merit to appellants' argument. Appellants claim that the stay violated both the letter and the spirit of this Court's decision in *Parfi I*. But appellants cite to no portion of our previous decision that requires the Delaware action and Swedish arbitration to proceed simultaneously. The issue presented in *Parfi I* was whether the arbitration clause of the Underwriting Agreement

was sufficiently broad so as to require arbitration of appellants' breach of fiduciary duty claims. This Court held:

[Appellants] must split different claims that arise from the same transaction if some of those claims are based on rights that cannot be adjudicated by an arbitrator, like the Tribunal here, who can grant relief based only on the limited set of duties created by a particular agreement. While some agreements, by their nature, extend so far as to mandate arbitration for breach of fiduciary duty claims, the Underwriting Agreement here did not. The right to vindicate breaches of fiduciary duty inflicted by a majority stockholder on the minority is a central doctrine of Delaware law. Absent clear expression of an intent to arbitrate breach of fiduciary duty claims, Parfi has the right to have the merits of those claims adjudicated by the Court of Chancery.[3]

*Parfi I* did not address, directly or indirectly, the trial court's inherent authority to control its docket or the propriety of its staying the Delaware action.

■ The only remaining question relating to the stay is whether the trial court abused its discretion.[4] Nothing in this record supports such a finding. At the time the trial court entered the stay, Plenteous had prevailed in the liability phase of the Swedish arbitration, and it had made a formal demand for damages. At that point, it appeared that the remaining arbitration was about to begin and would be concluded promptly. The trial court noted that a stay would be efficient, and would allow the court to determine the impact of the arbitration on the Delaware claims with the benefit of a complete record. By offering to stay the arbitration and proceed with the Delaware action, appellants

tacitly agreed that a stay would be appropriate. For valid reasons, the trial court thought it more appropriate to do the opposite. We conclude that the trial court acted well within its discretion.

What happened after the stay was entered is not entirely clear. The trial court expected the damages arbitration to go forward, and Plenteous's Swedish lawyer represented that Plenteous would initiate the arbitration by October 2004. Two months later, that same lawyer advised that Plenteous would not be pursuing arbitration because Plenteous was no longer able to finance the approximately 400,000 Euro arbitration fee. This revelation prompted appellees' motion to dismiss for failure to prosecute and appellants' motion to lift the stay. At the March 3, 2005, hearing on the competing motions, the trial court expressed its exasperation, and stated:

... I'm not going to dismiss it sua sponte. I'm going to allow defendants to take all the discovery they want of plaintiffs. There'll be no discovery by the plaintiffs of the defendants. I don't see any need for it....

After that time I will give the defendants the opportunity to also ask for substantial fee-shifting as a condition for going forward, the agreement that the prior litigation—the arbitration judgment is null and void, and that there'll be no recovery on any of the claims made in the arbitration, and the possible use of evidentiary presumptions against the plaintiffs in the case....

\* \* \*

... I'm going to allow discovery against prior counsel who were involved in these things.... I also want to know all about this joint prosecution agree-

---

3. 817 A.2d at 159–60.

4. *General Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681 (Del.1964).

ment. I want to know the relationship among these people, why this funding determination was made, when it was made, why it is that a recent funding shortage excuses inexcusable torpor that's existed for a long period of time.

\* \* \*

If [appellants] want to concede to dismissal now, we don't have to go into any of this.[5]

Appellants were not willing to stipulate to dismissal, and appellees initiated the discovery about appellants' finances and prosecution plans pursuant to the trial court's instruction.

Six months later the parties were back in court on appellees' motion to compel the "sanctions" discovery, and appellants' counsel's motion to withdraw. During the hearing, the trial court again suggested, several times, that appellants might be well advised to dismiss their case, but that did not happen. The trial court granted appellees' motion to compel and imposed costs against appellants. The trial court deferred ruling on the motion to withdraw, however, and appointed a special master to hear and consider that motion.

■ Appellants argue that the trial court abused its discretion in granting the motion to compel and in awarding sanctions on the motion. They contend that the only purpose for the discovery was to aid the court in deciding their motion to lift the stay, which should not have been entered in the first place. In addition, appellants argue that the trial court should not have ordered "invasive" discovery into their privileged communications and attorney work product.

This argument also lacks merit. The trial court allowed the "sanctions" discovery only after appellants announced, more

than one year after making a \$569 million arbitration demand, that they were not initiating the damages phase of the Swedish arbitration because they could not afford to do so. Before entering appellees' requested sanction of dismissal for failure to prosecute, the trial court needed to know whether there was any explanation for appellants' conflicting and somewhat incredible representations. The "sanctions" discovery would have provided the needed information, but appellants were not forthcoming in their responses. Accordingly, the trial court acted well within its discretion by compelling the discovery and entering a fee-shifting award.

■ Finally, we turn to the only meritorious claim asserted in this appeal. Transcripts of the numerous office conferences and hearings in this case reveal two things: 1) appellants are largely responsible for their current predicament; and 2) the trial court, in an effort to manage the litigation, was drawn into the fray. By the time the trial court granted appellants' counsel's motion to withdraw in April 2006, there had been more than two years of machinations yet no progress on the substantive claims. Given this history, the trial court made it clear that additional delay would not be tolerated. Appellants were given until May 15, 2006, to obtain new counsel or face dismissal.

Appellants contacted new counsel, NBP, immediately after the April 3' order allowing previous counsel to withdraw, but they did not reach agreement on fee arrangements until the May 15 deadline was imminent. As a result, on May 1 NBP faxed a letter to the trial court requesting a 60 day extension to allow NBP to review the files and retain local counsel. The trial court

**5.** *Parfi v. Mirror Image Internet,* C.A. No. 18507, Office Conference transcript at 5, 9–10 (March 3, 2005).

was not pleased. In a telephone conference, the court ruled:

> ... [Y]ou have until [May 31, 2006]— and this is being exceedingly charitable to your clients—to enter an appearance with Delaware counsel on behalf of the plaintiffs or I'm dismissing the action. The plaintiffs had more than enough time. They have been on notice for a long, long time. They accused their prior counsel of all kinds of inappropriate behavior, which is among the reasons why it was impossible for the prior counsel to continue. But the fact that you— that you're only now asking [prior counsel] for the records, you know, is just yet another indication of torpor.
>
> So I'm being extremely generous. I'll give you until [May 31[st]]. And I don't expect anything short of a full appearance, and it will be a nonwithdrawable appearance.[6]

NBP did not enter an appearance, and the trial court dismissed the action, with prejudice, on June 1, 2006.

 Appellants argue that their counsel could not enter a nonwithdrawable appearance because the Delaware Lawyers' Rules of Professional Conduct require attorneys to withdraw from representing clients under specified circumstances.[7] As a result, appellants claim, the trial court's nonwithdrawable appearance order was an abuse of discretion. We agree. The Rules require attorneys to withdraw from representation if, among other reasons, the representation "will result in violation of the rules of professional conduct or other law...."[8] A court may order attorneys to continue representation despite good cause to withdraw,[9] if "other considerations ... take precedence, such as main-

taining fairness to litigants and preserving a court's resources and efficiency."[10] But such an order must be based on the specific circumstances presented. The trial court's requirement that NBP enter a nonwithdrawable appearance, which effectively constituted a blanket denial of any future motion to withdraw, regardless of the circumstances, was an abuse of its discretion.

### Conclusion

Based on the foregoing, the judgment of the Court of Chancery dismissing this action with prejudice is AFFIRMED in part, REVERSED in part, and REMANDED for further action. Jurisdiction is not retained.

---

6. Appellees' Appendix, B232.

7. Del. R. Prof. Conduct 1.16.

8. Del. R. Prof. Conduct 1.16(a)(1).

9. Del. R. Prof. Conduct 1.16(c).

10. *Haines v. Liggett Group, Inc.,* 814 F.Supp. 414, 423 (D.N.J.1993).