**SUPERIOR COURT
OF THE
STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Submitted: April 7, 2025
Decided: April 23, 2025

David A. Felice, Esquire
BAILEY & GLASSER, LLP
2961 Centerville Road
Wilmington, Delaware 19808

David B. Wechsler, Esquire
Daniel B. Grossman, Esquire
Kim L. Michael, Esquire
HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, New York 10005

Alexandra M. Cumings, Esquire
Rachel R. Tunney, Esquire
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, Delaware 19801

> RE:  *Anthony A. Romeo v. DMG Practice Management Solutions, LLC*
> C.A. No. N24C-11-273 PRW
> Defendant's Motion to Dismiss or Stay

Dear Counsel:

This Letter Order resolves Defendant DMG Practice Management's Motion

to Dismiss or Stay (D.I. 2).  For the reasons explained below, Defendant DMG

Practice Management's Motion to Stay is **GRANTED**; the request for dismissal is

**MOOT** at this point and may be revisited upon lift of the stay.  Given this disposition

on the papers, the oral argument scheduled for next week will be removed from the

Court's calendar.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE PARTIES

Dr. Romeo is an individual who resides—at times relevant here, worked—in Illinois.[1]

DMG Practice Management Solutions, LLC, is a Delaware limited liability company with its principal place of business in Illinois.[2]

Non-party Duly, formerly known as DuPage Medical Group, is the parent company of DMG and an Illinois corporation.[3]

### B. THE EMPLOYMENT AGREEMENT AND RESTRICTED UNIT AGREEMENT

Dr. Romeo is a surgeon who entered into an employment agreement with Duly in 2020.[4]  His compensation included 15,000 units of DMG's Class B Units.[5]  The terms regarding the units were further outlined in the Restricted Unit Agreement that Dr. Romeo and DMG are parties to.[6]  It states that:

---

[1]  Compl. ¶ 13 (D.I. 1).

[2]  Compl. ¶ 15.

[3]  Def.'s Mot. to Dismiss at 3 (D.I. 2); *DuPage Medical Group Announces Rebrand to Duly Health and Care to Reflect Growth and Organizational Evolution*, DULY (Sept. 15, 2021), https://www.dulyhealthandcare.com/news/dupage-medical-group-announces-rebrand-to-duly-health-and-care-to-reflect-growth-and-organizational-evolution.

[4]  Def.'s Mot. to Dismiss, Ex. A ("Employment Agreement").

[5]  *Id.*, Ex. C ("Restricted Unit Agreement").

[6]  *See generally* Restricted Unit Agreement.

> In the event of the termination of the Unitholder's employment or other service relationship with the Company or any of its subsidiaries for Cause or due to the Unitholder's resignation (other than due to Retirement), or the Unitholder's violation of the Continuing Obligations (as defined below), whether before or after the termination of the service provider relationship, the Unitholder will forfeit to the Company all vested and unvested Units, without any consideration due or payable to such Unitholder, and such Unitholder will cease to have any further right, title or interest in the forfeited Units.[7]

Section 3 of the Employment Agreement with Duly governs the termination of the parties' relationship.[8] It grants Duly the right to terminate "for cause immediately upon the occurrence" of specific events.[9] It also allows Dr. Romeo to terminate the agreement for cause if: (1) Duly fails to make payments and the failure continues for 10 days post notice; or (2) Duly breaches any material terms and fails to cure within 30 days after notice.[10] Either party may terminate without cause upon giving a 90-day notice.[11]

Illinois law governs the Employment Agreement with Duly; Delaware law governs the Restrictive Unit Agreement with DMG.[12]

---

[7] *Id.* § 3(a).

[8] *See generally* Employment Agreement.

[9] *Id.* § 3.1(a).

[10] *Id.* § 3.1(b).

[11] Def.'s Mot. to Dismiss, Ex. B ("Employment Agreement Amendment") § 3.1(c).

[12] Employment Agreement § 12.3; Restricted Unit Agreement § 11.

### C. THE TERMINATION

Beginning in 2023, the relationship between Duly and Dr. Romeo soured. According to Dr. Romeo, Duly breached the Employment Agreement by firing his support staff and demoting him via a company-wide email with no prior notice.[13]

In March 2024, Dr. Romeo sent a letter to Duly. Therein, he claimed that Duly was in breach of the Employment Agreement, specifically referencing Exhibit 1.1(a) which governed Dr. Romeo's involvement in management.[14] Duly responded four days later stating that the issue was based on a "misunderstanding."[15] Dr. Romeo wasn't satisfied and sent two more letters giving official notice of Duly's breach.[16] Still unhappy with Duly's lack of action, Dr. Romeo sent another notice on April 24, 2024, warning that Duly had 30 days to cure.[17]

About a month later, Duly responded by denying any breach and suggesting that any possible breach "can be cured immediately and through this letter by DMG's previous representations that Dr. Romeo is free to resume his duties . . . ."[18]

---

[13]   Compl. ¶¶ 53-70.

[14]   *Id.* ¶¶ 71-72.

[15]   *Id.* ¶ 75.

[16]   *Id.* ¶¶ 76-77.

[17]   *Id.* ¶ 79.

[18]   Compl. ¶ 80; Def.'s Mot. to Dismiss at 9.

Still claiming that the breaches weren't cured, Dr. Romeo sent a letter on June 4, 2024, which purported to provide "written notice that he is terminating the Employment Agreement pursuant to Section 3.1(b)(ii)."[19] Duly acknowledged the termination the next day and later informed Dr. Romeo that his last day would be June 12.[20] Since his termination, Duly and DMG have refused to give Dr. Romeo his vested units claiming that he is no longer entitled to them under the Agreements.[21]

## D. THE ENSUING LITIGATION

In November, Dr. Romeo filed this complaint against DMG.[22] He requests that the Court: (1) declare that the vested Units are not subject to forfeiture (declaratory judgment); (2) find that DMG breached the Restrictive Unit Agreement by deeming that Dr. Romeo's vested units were forfeited; and (3) hold that DMG violated the Illinois Wage Payment and Collection (the "IWPCA") by deeming the vested units forfeited.[23]

Dr. Romeo also filed for arbitration against Duly in Illinois over the alleged

---

[19]  Def.'s Mot. to Dismiss, Ex. D ("Termination Letter").

[20]  Compl. ¶¶ 85-89.

[21]  *E.g.*, Def.'s Mot. to Dismiss at 10.

[22]  *See generally* Compl.

[23]  *Id.* ¶¶ 93, 97.

breach of the Employment Agreement.[24]

In response to these maneuverings by Dr. Romeo, DMG brings this motion to dismiss or stay the action.[25]

## II. PARTIES' CONTENTIONS

DMG claims that Dr. Romeo's complaint does not allege sufficient facts to give rise to a breach-of-contract claim.[26] It states that the Restrictive Unit Agreement's plain language does not support Dr. Romeo's request for declaratory judgment or a finding that DMG breached the contract.[27] DMG also claims that Dr. Romeo's IWPCA claim fails because DMG is not an employer under the statute and the units do not qualify as compensation.[28] Finally, if DMG's motion to dismiss isn't granted, it requests a stay to allow the arbitration between Duly and Dr. Romeo to conclude before this case proceeds.[29]

Dr. Romeo requests that this action move forward now and, if there are any fatal issues with the pleadings, that the motion to dismiss be granted with leave for

---

[24] *Id.* at 10-11.

[25] *See generally* Def.'s Mot. to Dismiss.

[26] *Id.* at 2.

[27] *Id.* at 12-18.

[28] *Id.* at 18-22.

[29] *Id.* at 22-25.

him to amend his complaint.[30]

## III. STANDARD OF REVIEW

"Under Superior Court Civil Rule 12(b)(6), '[t]he legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint.'"[31] Delaware's pleading standard is "minimal."[32] "When considering a Rule 12(b)(6) motion, the court (i) accepts as true all well-pled factual allegations in the complaint, (ii) credits vague allegations if they give the opposing party notice of the claim, and (iii) draws all reasonable inferences in favor of the plaintiffs."[33]

In the alternative, it is well within the Court's discretion to grant a motion to stay in an instance like this.[34]

---

[30] Pl.'s Opp'n to Mot. to Dismiss at 12-32 (D.I. 5).

[31] *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (quoting *L&L Broad. LLC v. Triad Broad. Co., LLC*, 2014 WL 1724769, at *2 (Del. Super. Ct. Apr. 8, 2014)).

[32] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 536 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 895 (Del. 2002)).

[33] *Ont. Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 294 A.3d 65, 84 (Del. Ch. 2023) (citing *Cent. Mortg.*, 27 A.3d at 535).

[34] *See Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sept. 9, 2009) (explaining that a court "possesses the inherent power to manage its own docket and may, on the basis of comity, efficiency, or common sense, issue a stay pending the resolution of an arbitration, even for those claims that are not arbitrable"); *see also Bastion Rest. Grp. LLC v. Gaudelet*, 2024 WL 5135977, at *3 (Del. Super. Ct. Dec. 17, 2024) (applying the principal when addressing indemnity claims).

## IV. DISCUSSION

The Court may find that a stay is proper when the facts are intertwined with arbitration proceedings and the Court would benefit from reviewing the complete arbitration record.[35] Just so here.

In this case, Dr. Romeo's claims against DMG rely on the allegation that the units were wrongfully withheld.[36] Such a determination is heavily dependent on whether Duly violated the Employment Agreement. Without question, Duly's actions impact whether Dr. Romeo's departure qualifies as a "resignation" that

---

[35] *See Parfi Holding AB v. Mirror Image Internet, Inc.*, 926 A.2d 1071, 1075 (Del. 2007); *see also Phillips Petroleum Co. v. Arco Alaska, Inc.*, 1983 WL 20283, at *4 (Del. Ch. Aug. 3, 1983) ("Here, however, given the magnitude of the situation, given the fact that the arbitration is the product of the operating agreement voluntarily entered into by the parties, and given the enormous burden that would be involved in the simultaneous litigation of the same basic controversy with many of the same witnesses and attorneys on two coasts at the same time, I think that common sense dictates that this case should be stayed pending the decision of the arbitrators.").

There is no authority barring or counseling against exercising the Court's discretion to grant a stay when only one of the parties is involved in related arbitration proceedings. This is commonsensical because claims naming different parties may still have substantially similar issues and the other proceedings may provide useful insight to a court sitting on a closely related suit. Too, those arbitral decisions might inform the parties' litigative acts in circumstances like this. Be sure—though likely helpful to all involved here—the Court won't reflexively deem any of the arbitrator's decisions as binding to the parties now before it.

[36] While Dr. Romeo's says otherwise, the first-filed rule is of no moment here because it doesn't trump controlling contractual provisions and DMG is not a party to the arbitration. *See Nokia Sols. & Networks Oy v. Collision Commc'ns, Inc.*, 2020 WL 2095829, at *3 (Del. Super. Ct. Apr. 30, 2020) (explaining that the first-filed rule applies when (1) there is a prior action pending elsewhere, (2) in a court capable of providing prompt and complete justice, (3) involving the same parties and issues); *see also Utilipath, LLC v. Hayes*, 2015 WL 1744163, at *3 (Del. Ch. Apr. 15, 2015) ("The McWane doctrine is a default rule of common law, which the parties to the litigation are free to displace by a valid contractual agreement.") (citations omitted).

forfeits his units under the Restricted Unit Agreement.

Since the propriety of Duly's actions are—at Dr. Romeo's prompting—now before an arbitrator, this Court will exercise its discretion to withhold action in this matter until that issue is resolved there.[37] There is no reason why these issues should be arbitrated/litigated concurrently. Accordingly, this action is stayed pending the resolution of the ongoing arbitration between Dr. Romeo and Duly. Only upon the completion of that arbitration between Dr. Romeo and Duly should and will this Court independently determine if DMG is liable.[38]

## V. CONCLUSION

DMG's Motion to Stay is **GRANTED**. Its prayer for dismissal of all claims is deemed **MOOT** and may—upon proper application by the parties—be revisited upon lifting of the stay.

After conferring with DMG, Dr. Romeo should file a status update in this Court no later than 30 days after the disposition of the now-pending Romeo/Duly arbitration.

---

[37] *See Rapoport v. Litig. Tr. of MDIP Inc.*, 2005 WL 3277911, at *2 (Del. Ch. Nov. 23, 2005) ("The granting of a stay rests within the sound discretion of the trial court.").

[38] DMG and Dr. Romeo have granted Delaware courts exclusive jurisdiction over their relationship. Restricted Unit Agreement § 11.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

_____
Paul R. Wallace, Judge

cc:  All Counsel via File and Serve